# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| | ) | |
| MAZZETTA COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 26-02233 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiff, Mazzetta Company LLC, by and through its counsel, alleges and states, as follows:

## ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1.      Plaintiff seeks review of the final determination issued by the U.S. Department of Commerce ("Commerce") in its nineteenth administrative review of the antidumping duty ("AD") order on certain frozen warmwater shrimp from Thailand (the "*AD Order*"). The final results of Commerce's review, which covers entries made between February 1, 2023 and January 31, 2024 (the "POR"), were published in the *Federal Register* as *Certain Frozen Warmwater Shrimp From Thailand: Final Results of Antidumping Duty Administrative Review; 2023-2024*, 91 Fed. Reg. 8,182 (Dep't Commerce Feb. 20, 2026) ("*Final Results*").

2.      The factual findings and legal conclusions of the contested determination were set out primarily in the "Issues and Decision Memorandum" accompanying the final results. *See Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Certain Frozen Warmwater Shrimp from Thailand; 2023-2024*,

Case No. A-549-822 (Feb. 17, 2026) (ACCESS Barcode 4881614-02) ("IDM").

## JURISDICTION

3.     Plaintiff brings this action pursuant to, and in accordance with, sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended (codified at 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii)), contesting certain aspects of the final results of the 2023-2024 administrative review of the antidumping duty order on *Certain Frozen Warmwater Shrimp from Thailand*.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c), which confers upon the U.S. Court of International Trade exclusive jurisdiction to review final antidumping duty determinations issued by Commerce under 19 U.S.C. § 1516a(a)(2).

## STANDING

4.     Plaintiff is a U.S. importer of subject merchandise, certain frozen warmwater shrimp from Thailand, and therefore is an interested party within the meaning of 19 U.S.C. § 1677(9)(A).  Plaintiff also actively participated in the administrative review through the submission of factual information and written argument and, thus, also is a party to the proceeding as defined in 19 C.F.R. § 351.102(b)(29)(ii).  Plaintiff participated in the administrative review proceeding through the submission of comments and through the filing of factual information and legal arguments to address substantive case issues.  Plaintiff thus has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS

5.     The *Final Results*, which are being challenged herein, were published in the *Federal Register* on February 20, 2026.  *See* 91 Fed. Reg. 8,182.  On March 17, 2026, Plaintiff

timely filed a Summons initiating this action within thirty days of the publication of the *Final Results*, and Plaintiff is timely filing the Complaint today (within thirty days of the filing of the Summons).  The filing of the Summons and Complaint thus are timely in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of the Rules of the U.S. Court of International Trade.

## STANDARD OF REVIEW

6.      This Court reviews actions concerning determinations issued by Commerce brought under 19 U.S.C. § 1516a(a)(2) to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

## PROCEDURAL HISTORY

7.      On April 9, 2024, Commerce initiated the nineteenth administrative review of the antidumping duty order on Certain Frozen Warmwater Shrimp from Thailand.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 24,780 (Dep't Commerce Apr. 9, 2024) ("*Initiation Notice*").  Commerce's period of review ("POR") was February 1, 2023, through January 31, 2024.

8.      On May 30, 2024, Commerce issued a memorandum stating that it had selected two group entities for individual examination as mandatory respondents in the 2023-2024 administrative review: (1) Thai Union Group Public Co., Ltd.; Thai Union Seafood Co., Ltd.; and Okeanos Food Co., Ltd., as well as affiliated parties Pakfood Public Co., Ltd.; Asia Pacific (Thailand) Co., Ltd.; Chaophraya Cold Storage Co., Ltd.; Okeanos Co., Ltd.; and Taksin Samut Co., Ltd. (collectively, "Thai Union"); and (2) Charoen Pokphand Foods Public Company

Limited and CP Merchandising Co., Ltd. (collectively, "CP Foods"). During the POR, Plaintiff was an importer of subject merchandise produced and exported by CP Foods.

9. On July 16, 2024, Commerce received timely responses from CP Foods and Thai Union to section A of Commerce's antidumping duty questionnaire.

10. On August 15, 2024, Commerce received a timely response from Thai Union to the remaining sections of the questionnaire (*i.e.*, sections B, C, and D, the sections covering home market sales, U.S. sales, and cost of production (COP)/constructed value (CV), respectively). On the same day, CP Foods submitted a letter in which it informed Commerce that it was suspending its participation in the proceeding.

11. On September 9, 2024, Commerce selected Thai Royal Frozen Foods Co., Ltd. ("Thai Royal") as an additional respondent for individual examination and issued the antidumping duty questionnaire to Thai Royal. From October 10, 2024, to October 30, 2024, Thai Royal submitted timely responses to Commerce's antidumping duty questionnaire.

12. On February 20, 2025, Commerce issued a supplemental questionnaire to Thai Union, and on February 20, 2025, and on March 21, 2025, Commerce issued supplemental questionnaires to Thai Royal. On March 13, 2025, Commerce received Thai Union's response to the supplemental question, and on March 14 and 21, 2025, Commerce received Thai Royal's responses to the supplemental questionnaires.

13. On May 2, 2025, Mazzetta Company, filed comments for Commerce's consideration in the preliminary results of review, and on May 9, 2025, and May 12, 2025, Commerce received rebuttal comments from the American Shrimp Processors Association ("ASPA") and the Ad Hoc Shrimp Trade Action Committee ("AHSTAC"), respectively.

- 4 -

14.     On June 11, 2025, Commerce published the preliminary results of its administrative review in the *Federal Register* in which it determined a preliminary dumping margin of 0.00 percent for Thai Union and 0.73 percent for Thai Royal. *See Certain Frozen Warmwater Shrimp From Thailand: Preliminary Results of Antidumping Duty Administrative Review, Rescission of Review, in Part, and Preliminary Determination of No Shipments; 2023-2024*, 90 Fed. Reg. 24,572 (Dep't Commerce June 11, 2025) ("*Preliminary Results*"). The non-selected companies under review were preliminarily assigned a weighted-average dumping margin of 0.73 percent based on the margin calculated for Thai Royal; and CP Foods was assigned a margin based on adverse facts available ("AFA") of 57.64 percent. *See id.*

15.     On August 5, 2025, Commerce received case briefs from Mazzetta, Thai Union, Thai Royal, AHSTAC, and ASPA.  Mazzetta argued in particular that Commerce should reconsider its preliminary assignment to CP Foods of a margin based on an adverse inference and should assign to CP Foods instead a dumping margin based on neutral facts available. Alternatively, Mazzetta argued that if Commerce decided in the final results of review to continue to use an adverse inference to determine the dumping margin for CP Foods, then Commerce should reconsider its preliminary approach, corroborate any secondary information that it used as the basis for an adverse inference to ensure it had probative value, and assign to CP Foods a more appropriate AFA dumping rate given the particular facts of this review.

16.     On August 6, 2025, Commerce issued a Post-Preliminary Analysis in which it announced that it was making changes to it differential pricing analysis.  Specifically, Commerce explained that it no longer was using the Cohen's *d* test as part of its differential pricing analysis and that it was replacing it with a "price difference test."  Commerce also announced that it had

discontinued the use of the "mixed method" as a potential alternative comparison methodology.

As a result of Commerce's change in practice, Commerce recalculated its preliminary dumping

margins and determined estimated weighted-average dumping margins of 1.28 percent for Thai

Union and 0.00 percent for Thai Royal. Commerce also determined a weighted-average

dumping margin of 1.28 percent for the non-selected companies under review based on the

margin calculated for Thai Union, and continued to assign CP Foods a margin of 57.64 percent

based on adverse facts available.

17.     From August 14 to 22, 2025, Commerce received case and rebuttal briefs specific

to the differential pricing test used in the Post-Preliminary Analysis from Thai Union, Thai

Royal, AHSTAC, and ASPA.

18.     On February 18, 2026, Commerce issued its final Issues and Decision

Memorandum of the 2023-2024 administrative review. *See Issues and Decision Memorandum

for the Final Results of the Administrative Review of the Antidumping Duty Order on Certain

Frozen Warmwater Shrimp from Thailand*; 2023-2024 (Feb. 17, 2026). Based on a review of the

record and comments received from interested parties, Commerce made certain changes from the

*Preliminary Results* and Post-Preliminary Analysis, and determined weighted-average dumping

margins of 2.01 percent for Thai Union and 0.00 percent for Thai Royal. Commerce determined

a weighted-average dumping margin of 2.01 percent for the non-selected companies under

review based on the margin calculated for Thai Union, and assigned CP Foods a margin of 17.38

percent based on adverse facts available. On February 20, 2026, Commerce published its final

results of review. *See Certain Frozen Warmwater Shrimp from Thailand: Final Results of

Antidumping Duty Administrative Review; 2023-2024*, 91 Fed. Reg. 8,182 (Feb. 20, 2026).

## ISSUES PRESENTED BY THE ACTION AND
## PLAINTIFF'S STATEMENT OF CLAIMS

19.     In the following respects, and for other reasons apparent from the record of the administrative proceeding, Commerce's *Final Results* in its 2023-2024 antidumping duty administrative review are unsupported by substantial record evidence and/or are otherwise not in accordance with law.

### COUNT ONE

20.     Paragraphs 1 through 19 are incorporated herein by reference.

21.     Sections 776(a)(1) and 776(a)(2) of the Tariff Act provide that, if necessary information is missing from the record, or if an interested party: (A) withholds information that has been requested by Commerce; (B) fails to provide such information in a timely manner; (C) significantly impedes a proceeding under the antidumping statute; or (D) provides such information but the information cannot be verified, Commerce shall use facts otherwise available in reaching the applicable determination.  Section 776(b) of the Tariff Act provides that Commerce may use an adverse inference in selecting from among the facts otherwise available when a party fails to cooperate by not acting to the best of its ability to comply with a request for information.  Section 776(d)(2) also states that Commerce should consider the facts and circumstances surrounding its decision to use an adverse inference when selecting an appropriate AFA rate.

22.     In the *Final Results*, Commerce determined that mandatory respondent CP Foods did not participate fully in the administrative review because it did not respond fully to Commerce's antidumping questionnaire and withdrew from participation in the review.  Having concluded that the use of facts otherwise available with adverse inferences was appropriate with

- 7 -

respect to CP Foods, Commerce assigned CP Foods a final dumping margin of 17.38 percent. Because CP Foods's inability to adhere to Commerce's burdensome reporting requirements was the sole reason for CP Foods's decision to suspend its participation in the review and because CP Foods notified Commerce of these difficulties early in the review and was not granted any relief in its reporting requirements outline in Commerce's original antidumping duty questionnaire , Commerce should not have assigned CP Foods a margin based entirely on an adverse inference and instead should have assigned to CP Foods a dumping margin based on neutral facts available.  Such approach would have been reasonable given the circumstances and would have been consistent with the statutory requirement of not placing an unreasonable burden on a respondent.

23.     Commerce's failure to provide an alternative to CP Foods of its substantially burdensome request for information was unsupported by the record; arbitrary, capricious, and an abuse of discretion; and otherwise not in accordance with the law.  Commerce's decision in the *Final Results* to apply adverse facts available to CP Foods without a consideration of the circumstances leading to imposition of adverse facts available and to impose on CP Foods a final antidumping duty margin based entirely on adverse facts available also constitutes an abuse of discretion and was not supported by the facts on the administrative record.

## COUNT TWO

24.     Paragraphs 1 through 19 are incorporated herein by reference.

25.     In the *Final Results*, Commerce assigned to CP Foods a final AFA dumping rate of 17.38 percent that was derived by taking the simple average of all positive (*i.e.*, non-zero) transaction-specific dumping margins calculated for Thai Union in this proceeding.  Commerce

provided no explanation for adopting this particular methodology or for why it based the AFA rate for CP Foods on a *simple* average of Thai Union's positive transaction-specific dumping margins, as opposed to a *weighted* average. This is an important distinction because when Commerce has adopted this approach in the past, Commerce has relied on a weighted-average of transaction-specific dumping margins because a weighted-average rate is grounded in the actual behavior of the responding parties during the same period of time and because Commerce has considered it appropriate to select a rate as high as the cooperating respondent with the highest weighted-average margin. Because Commerce provided no explanation for its change in practice or for why a weighted-average of Thai Union's positive transaction-specific dumping margins does not better reflect the actual behavior of a responding party during the POR, Commerce's decision is not supported by record evidence and otherwise not in accordance with the law.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

26. For the reasons stated above, Plaintiff respectfully requests that the Court:

(a)    enter judgment in Plaintiff's favor;

(b)    declare that with respect to the issues raised in this Complaint, Commerce's determinations and all related findings and conclusions are unsupported by substantial evidence on the record or are otherwise not in accordance with law;

(c)    remand these matters to Commerce for redetermination consistent with the Court's opinion, including a recalculation of the antidumping duty margin assigned to Plaintiff's U.S. imports of subject merchandise produced and exported by CP Foods; and

(d)    provide such other relief as the Court deems just and proper.

**Court No. 26-02233**                                                    **Complaint**

Respectfully submitted,

/s/ Jonathan M. Freed
Jonathan M. Freed
Jarrod M. Goldfeder
Robert G. Gosselink
MacKensie R. Sugama

TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, DC  20003
Tel: (202) 223-3760
Fax: (202) 223-3763
Email: jfreed@tradepacificlaw.com

Dated:  March 31, 2026                   *Counsel to Mazzetta Company LLC*